LEIGH M. CLARK, Supernumerary Circuit Judge.
A jury found appellant guilty of robbery and fixed his punishment at thirty-one years and a day in the penitentiary. The court rendered judgment and pronounced sentence accordingly.
The alleged victim, Danny Clyde Wade, testified that he went to the Georgia Grill in Columbus, Georgia, about 10:30 P.M. September 27, 1974; he and defendant drank some beer there and left in defendant’s automobile to go to Phenix City. After arriving in Phenix City, defendant stopped the automobile, pulled a knife with his right hand and put it on Wade’s side; Wade opened the right door with his right hand and went out, and defendant followed him, and they scuffled and fought. He said he left the scene of the first scuffle, defendant caught up with him about a block and a half or two blocks away, and they had another scuffle. Wade said that when he first got out of the automobile, he had about twenty or twenty-five dollars in his shirt pocket, that in his scuffling with defendant his shirt pocket was ripped off and he did not recover the money in it. He further said that he lost his wallet in the scuffle and contents of it were scattered on the ground. He became unconscious during the last scuffle and regained consciousness in the ambulance that took him to the hospital, where he was treated for bruises.
A resident of the area of the second scuffle, Luther Boyd Tew, said that about midnight September 27-28, he was asleep, something woke him up and he heard some moaning and groaning. He looked outside and saw “one guy down on another one, beating on him, going through his pockets, and it looked like he threw something out in the middle of the road and then when a car topped the hill, the lights of the car hit on him and then he took out running. It looked like a billfold out in the middle of the road.” He called the police, who arrived in about three or five minutes. He and the policemen went to the man still on the ground and noticed that he had blood all over him and stated that his ribs were broken. The policemen radioed for an ambu *839 lance. He looked on the ground in the area where the person was lying and noticed some credit cards and “such as that had been thrown around in the yard—identification cards and such.” He said that the man on top of Wade “was going through his pockets at that time and he looked like he had his billfold, going through it, and when the light went on him, he threw the billfold.”
Officer Johnny Phillips testified that he answered a call to the scene of the alleged crime and while turning into Eighth Avenue toward 917 Eighth Avenue, from where he received the call, he saw a man at the corner of Eighth Avenue and the street from which he was making the turn, whom he identified as the defendant, who was afterwards arrested.
Witnesses for defendant testified that defendant remained in Georgia Grill until about 1:30 or 1:45 A.M. One of them said that Wade left the Georgia Grill about two hours before defendant. Defendant did not take the stand.
We see little basis for any substantial doubt that defendant was correctly identified by Wade and Officer Phillips. There is no basis for substantial doubt that a robbery was committed. The trial court charged the jury as to robbery and as to the crime of attempting to rob, having in mind doubtless the possibility that defendant did not succeed in taking money, or other property, from Wade. The evidence was ample to support the verdict, and the court was justified in overruling defendant’s motion for a new trial.
During the interrogation by the prosecution of Danny Wade as a witness, the following occurred:
“Q. I will ask you to look at the defendant seated at the table with Mr. Davis there, and I will ask you if that is one and the same man that stuck a knife in your side and assaulted you at 917 8th Avenue in Russell County, Alabama and took your personal effects ?
“MR. DAVIS: Again, Your Honor, we would object to that question; his identification is being based on prejudicial viewing of photographs.
“THE COURT: Overruled.
“A. Yes, sir.”
Appellant urges that the “prejudicial viewing of photographs” is referable to a viewing, as shown by the testimony of Danny Wade, of a number of photographs in the hands of the police and that one of them was a photograph of defendant. He argues that the evidence in the case subsequently showed that the print of the photograph of defendant had his name under his picture. Other evidence, however, indicated that in identifying such photograph, Wade was not influenced in any way by the name, even though he knew that the first name of defendant was James. Negligible at the most was any chance of irreparable misidentification of defendant by Wade, who had seen defendant on about two occasions prior to the night of the alleged crime, who had been with him, drinking with him, at Georgia Grill, ridden with him in his automobile, and engaged in two scuffles or fights with him. An answer to appellant’s contention in this respect is Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, in part as follows:
“. . . [C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.”
During the interrogation by the State of Officer Alsobrok as a witness, he said, “We obtained photographs of Mr. Impsom from Columbus Police Department.” Defendant then asked for a hearing out of *840 the presence of the jury and thereupon moved for a mistrial. The motion was overruled.
It was unfortunate, we think, that the witness said that the photographs were obtained from Columbus Police Department, but we cannot say that the trial court abused the discretion vested in it in overruling defendant’s motion for a mistrial. The corporate limits of Columbus, Georgia, and Phenix City, Alabama, are contiguous. The events pertinent to the alleged crime took place in Columbus and in Phenix City. It would have been natural for the police of Phenix City to call upon the police of Columbus for information as to the alleged victim and the alleged robber, both of whom, it seems, lived in Columbus. That Phenix City authorities obtained photographs from Columbus authorities does not necessarily mean that one photographed had a criminal record. During the discussion of defendant’s motion for a mistrial out of the presence of the jury, counsel for the prosecution stated:
“. . .I would ask the Court to also take notice that the Columbus Police Department in addition to Police records, keep a file on certain type people holding different jobs and taking pictures of them, taxi-cab drivers among others. If the court felt that this was prejudicial, we just ask that the Court instruct the jury to exclude it from any consideration in this case.”
Counsel for defendant then stated:
“It is impossible to wipe that from the minds of the jury since it is so highly prejudicial.”
The apparently undesigned reference to the photographs as Columbus Police Department photographs was not properly a matter of evidence in the case, but we cannot say that in light of all of the other evidence, as surveyed by the trial judge, the reference was so highly prejudicial to defendant as to require a mistrial.
During the cross-examination of the witness Alsobrook, counsel for defendant made the point that the warrant for the arrest of defendant was based on an affidavit by Wade that, in the alleged robbery, defendant had taken fifty-five dollars from Wade. He did so by having the witness read from the affidavit, and thereafter he pursued the matter as follows:
“Q. And then it is signed ‘D. C. Wade’ ?
“A. Yes, sir.
“Q. Will you tell the jury again what the amount that he swore to was that was taken from him ?
“A. Fifty-five dollars.
“Q. He swore to that, right ?
“A. Yes, sir.
“Q. Were you present when he swore to that?
“A. Yes, sir.
“THE COURT: Mr. Davis, don’t get over there and talk to the jury like that, you are making a speech to the jury. You are going to have your opportunity later on to make a speech to the jury.
“MR. DAVIS: I would except to that, Your Honor; I am merely making a point about the fifty-five dollars.
“THE COURT: Well, don’t make a speech to the jury; you are going to have your opportunity to make your speech to the jury.
“MR. DAVIS: No further questions.”
Of course, there is no way for the record to reflect where counsel was at the time, other than that he was in the court room, but it seems that it was the view of the court that counsel, while close to the jury, was unduly gesticulating, or otherwise emphasizing the point he had made, or was making, in a manner more appropriate in argument, or a speech, to the jury, than in *841 the cross-examination of a witness. We do not consider that there was any serious breach of propriety by counsel in his commendable enthusiasm in fully developing a point favorable to his client, nor do we think the trial court treated the incident as such, but was content with a mild, admonition, which on its face fails to reveal any harshness or bitterness of feeling.
The trial court refused two of defendant’s requested written charges:
“IX The Court charges the jury that an indictment for robbery also embraces the charge of assault and battery.”
“XII The Court charges the jury that an indictment for robbery also embraces the charge of larceny.”
Appellant correctly asserts that an assault and larceny are lesser included offenses in a charge of robbery and that where the evidence justifies a finding in effect that robbery was not committed, but that one of the lesser of said lesser included offenses was committed defendant is entitled to a charge, if requested, that would permit a finding by the jury that defendant was guilty of the lesser included offense. Kelly v. State, 235 Ala. 5, 176 So. 807; Rambo v. State, 134 Ala. 71, 32 So. 650; Taylor v. State, 48 Ala.App. 443, 265 So.2d 886.
The principle relied upon would not justify the giving of Charge XII. Under the undisputed evidence, any taking from the victim would have been “by violence to his person,” which precluded a finding that defendant was guilty of larceny only. As to charge XI, appellant argues that under the evidence as a whole it could have been found that no money, or other property, was taken from Wade by defendant. Even so, the undisputed evidence affords no basis for an inference that there was no attempt to take money, or other property, from the victim. The trial court covered the question of lesser included offenses by submitting to the jury for its determination the issue as to assault with intent to rob. The trial court in its oral charge made it clear to the jury that if defendant did not obtain any money or other property from defendant, he would not be guilty of robbery but at most of the lesser included offense of an assault with intent to rob. At the conclusion of the oral charge, counsel for both parties stated that they were “Satisfied.”
We have fully considered all of appellant’s assertions of error and have searched the record as a whole for any error prejudicial to defendant and have found none.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.